IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| JAMES LAMAR PATRICK, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Civil Action No. 3:11cv389-WHA |
| ) | (WO) |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

This case is before the court on a *pro se* motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255.

**I.   BACKGROUND**

Pursuant to a plea agreement, the petitioner, James Lamar Patrick ("Patrick"), pled guilty to conspiracy to possess with intent to distribute crack cocaine (Count 1) and attempted distribution of crack cocaine (Count 8), both in violation of 21 U.S.C. § 846.[1] After a sentencing hearing on June 2, 2010, the district court sentenced Patrick to 200 months in

---

[1] The change of plea hearing was held before the magistrate judge on March 17, 2010. Under the plea agreement, five additional counts of the indictment charging Patrick with distribution of crack were dismissed. The Government agreed that a two-level reduction in Patrick's offense level pursuant to U.S.S.G. § 3E1.1(a) for acceptance of responsibility was appropriate and to recommend at sentencing that Patrick receive an additional one-level reduction pursuant to § 3E1.1(b) if he timely provided authorities complete information concerning his involvement in the offense. The Government also agreed that if the Presentence Investigation Report indicated Patrick would benefit from drug rehabilitation, any sentence imposed should include a recommendation that he receive drug treatment during his incarceration. The plea agreement contained a waiver provision whereby Patrick relinquished his rights to appeal his conviction and sentence and to collaterally attack his sentence except on grounds of ineffective assistance of counsel and prosecutorial misconduct.

prison for each count of conviction, the terms to run concurrently.

Patrick filed a *pro se* notice of appeal alleging ineffective assistance of counsel against his trial counsel. His case was docketed by the Eleventh Circuit, and the district court appointed new counsel to represent him on appeal. After consulting with his appellate counsel, Patrick moved to dismiss his appeal voluntarily, and the Eleventh Circuit granted his motion to dismiss on October 14, 2010.

On May 18, 2011, Patrick filed this § 2255 motion asserting the following claims:

1. His guilty plea was involuntary because his trial counsel erroneously promised him that he would receive a sentence of not more than 15 years in prison.

2. His trial counsel rendered ineffective of counsel by failing to adequately consult with him about his right to appeal.

3. His trial counsel rendered ineffective assistance of counsel by failing to object to the Presentence Investigation Report's ("PSI") application of additional relevant conduct based on alleged drug buys by a confidential informant.

4. The Government breached the plea agreement by failing to recommend that he receive drug rehabilitation.

*See* Doc. Nos. 1 & 2.[2]

Based on the court's consideration of the parties' submissions, the record, and the applicable law, the court concludes that an evidentiary hearing is not required and that,

---

[2] Unless otherwise indicated, references to document numbers ("Doc. No.") are to those assigned by the Clerk of Court to pleadings docketed in this action. References to exhibits (Ex.") are to those filed by the Government with its answer, Doc. No. 10. Page references are to those assigned by CM/ECF.

pursuant to Rule 8(a), *Rules Governing Section 2255 Proceedings in the United States District Courts*, Patrick's § 2255 motion should be denied..

## II.  DISCUSSION

### A.  General Standard of Review

Collateral review is not a substitute for direct appeal; therefore, the grounds for collateral attack on final judgments of conviction are extremely limited.  A federal prisoner is entitled to relief under 28 U.S.C. § 2255 only if the district court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum sentence authorized by law, or (4) is otherwise subject to collateral attack.  *See* 28 U.S.C. § 2255; *United States v. Phillips*, 225 F.3d 1198, 1199 (11th Cir. 2000); *United States v. Patrick*, 198 F.3d 811, 813 n.5 (11th Cir. 1999).  "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'"  *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted).  "[A] non-constitutional error that may justify reversal on direct appeal does not generally support a collateral attack on a final judgment, unless the error (1) could not have been raised on direct appeal and (2) would, if condoned, result in a complete miscarriage of justice."  *Lynn*, 365 F.3d at 1232-33 (citations omitted); *Hill v. United States*, 368 U.S. 424, 428 (1962) (error of law does not provide basis for collateral attack unless claimed error constituted a "fundamental defect which inherently results in a complete

3

miscarriage of justice"). The "fundamental miscarriage of justice" exception recognized in *Murray v. Carrier*, 477 U.S. 478, 496 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent."

**B.     Claims Alleging Ineffective Assistance of Counsel**

A claim of ineffective assistance of counsel is governed by the standards of *Strickland v. Washington*, 466 U.S. 668 (1984). *Grossman v. McDonough*, 466 F.3d 1325, 1344 (11th Cir. 2006). Under *Strickland*'s two-part test, a petitioner must demonstrate (1) that "counsel's representation fell below an objective standard of reasonableness" and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Darden v. Wainwright*, 477 U.S. 168, 184 (1986) (internal quotation marks omitted); *see Strickland*, 466 U.S. at 687–88 & 694.

Scrutiny of counsel's performance is "highly deferential," and the court indulges a "strong presumption" that counsel's performance was reasonable. *Chandler v. United States*, 218 F.3d 1305, 1314 (internal quotation marks omitted). The court will "avoid second-guessing counsel's performance: It does not follow that any counsel who takes an approach [the court] would not have chosen is guilty of rendering ineffective assistance." *Id*. (internal quotation marks and brackets omitted). Thus, "[g]iven the strong presumption in favor of competence, the petitioner's burden of persuasion – though the presumption is not insurmountable – is a heavy one." *Id*.

4

As noted above, under the prejudice component of *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" *Strickland*, 466 U.S. at 694. A "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. The prejudice prong does not focus only on the outcome; rather, to establish prejudice, the petitioner must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable. *See Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993) ("[A]n analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective."). "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Id*. at 372.

Unless a petitioner satisfies the showings required on both prongs of the *Strickland* inquiry, relief should be denied. *Strickland*, 466 U.S. at 687. Accordingly, once a court decides that one of the requisite showings has not been made, it need not decide whether the other one has been. *Id*. at 697; *Duren v. Hopper*, 161 F.3d 655, 660 (11th Cir. 1998).

### 1. *Involuntary Guilty Plea Induced by Counsel's Promise Regarding Sentence*

Patrick contends that his guilty plea was involuntary because, he says, his trial counsel erroneously promised him that he would receive a sentence of not more than 15 years in prison. Doc. No. 1 at 4; Doc. No. 2 at 3-5.

5

The transcript of the change of plea hearing reflects that the magistrate judge fully and correctly advised Patrick of the statutory minimum and maximum sentence applicable to his offenses (not less than ten years' imprisonment and not more than life[3]). Ex. 8 at 9. The written plea agreement correctly set forth this same statutory range. Ex. 7 at 3. The plea agreement contained no sentencing recommendation or specific provision regarding the length of Patrick's expected sentence. At the change of plea hearing, Patrick stated under oath that he and his counsel had reviewed and discussed the plea agreement, and that he understood the terms of the plea agreement.[4] Ex. 8 at 7. Moreover, Patrick acknowledged under oath that, other than the terms of the plea agreement, no one had made any promises or assurances to him to get him to plead guilty. *Id*. at 8. The following relevant exchange also took place during the plea colloquy:

> THE COURT: Do you understand that your sentence will be determined by a combination of the advisory sentencing guidelines, possible authorized departures from those guidelines, and other statutory sentencing factors?
>
> [PATRICK]: Yes, ma'am.
>
> THE COURT: Have you and your attorney talked about how the advisory guidelines might apply to your case?

---

[3] *See* 21 U.S.C. §§ 846 & 841(b)(1)(A).

[4] The record is full of statements made by the court to Patrick with respect to the consequences of entering a plea of guilty. *See* Ex. 8. The court also explained to Patrick that he had a right to plead not guilty and to be tried by a jury. *Id*. at 11. To all the court's inquiries, Patrick responded that he understood his rights and that he understood what he was giving up by way of his plea.

>    [PATRICK]: Yes, ma'am.
>
>    ....
>
>    THE COURT: Do you understand that the Court will not be able to determine the advisory guideline range for your case until after the Presentence Report has been completed and you and the government have had an opportunity to challenge the reported facts and application of the guidelines recommended by the probation officer, and the sentence ultimately imposed may be different from any estimate that your attorney or anyone else may have given you?
>
>    [PATRICK]: Yes, ma'am.

Ex. 8 at 10.

In an affidavit filed with this court, Patrick's former counsel, Thomas K. Brantley, avers that although he initially advised Patrick that a rough estimate of his possible sentence (which was based on Brantley's prior conversations with the United States Attorney) was from 12 to 15 years in prison, he ultimately informed Patrick, prior to entry of his guilty plea, that his likely sentence, based on his estimated guidelines calculation, would be between 168 months (14 years) and 262 months (21 years and 10 months) in prison. Doc. No. 7 at 1-3. According to Brantley, this upward recalculation of Patrick's estimated guidelines range occurred after he learned from the U.S. Attorney that the Government did not want or need Patrick to render substantial assistance by testifying against others. *Id*. at 2. Brantley states that after Patrick was advised of this new estimate, Patrick told him that he wanted to plead guilty. *Id*. at 2.

The record also contains a letter that Brantley mailed to Patrick seven days before the change of plea hearing in which Brantley informed Patrick that he was looking at a possible

7

sentence of 20 years, rather than the 12 to 15 years originally discussed; attached to the letter was an e-mail from the U.S. Attorney informing Brantley of the reasons for the possibility of the 20-year sentence. *See* Doc. No. 7 at 6-8. Patrick indicates in his § 2255 motion that he read the letter and the attached e-mail prior to entering his guilty plea. Doc. No. 2 at 4.

"[W]hen a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false." *United States v. Rogers*, 848 F.2d 166, 168 (11th Cir. 1988). "There is a strong presumption that the statements made during the [guilty plea] colloquy are true." *United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994). Patrick's sworn statements in open court that his guilty plea was not induced by any promises or assurances outside the plea agreement – and that he understood that the sentence imposed might be different from any estimate made by his attorney or anyone else – preclude the relief he seeks. Such statements refute Patrick's assertion that his plea was induced by assurances from his counsel regarding his sentence and reflect that Patrick entered his guilty plea fully aware of the possibility of a sentence of more than 15 years' imprisonment.

A defendant's representations regarding the voluntary nature of his plea "constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Patrick fails to demonstrate that his guilty plea was involuntary or that his counsel rendered ineffective assistance by inducing him to plead guilty based on erroneous promises about his sentence. Therefore, Patrick is not entitled to relief based on this claim.

### 2.     *Counsel's Failure to Consult About Appeal*

Patrick contends that his trial counsel, Brantley, rendered ineffective assistance of counsel by failing to consult with him adequately about his right to appeal. Doc. No. 1 at 5; Doc. No. 2 at 5.

In *Roe v. Flores-Ortega*, 528 U.S. 470 (2000), the United States Supreme Court held that "an attorney who fails to file an appeal on behalf of a client who specifically requests it acts in a professionally unreasonable manner per se." *Gomez-Diaz v. United States*, 433 F.3d 788, 791-92 (11th Cir. 2005) (citing *Flores-Ortega*, 528 U.S. at 477). In such cases, prejudice is presumed, and the petitioner is entitled to a new appeal without any further showing. *Flores-Ortega*, 528 at 483. Where a client has not made a specific request of his counsel to file an appeal, counsel generally has a duty to "consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Flores-Ortega*, 528 U.S. at 480. The Supreme Court defined the term "consult" to mean "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." *Id*. at 478.

Patrick does not maintain that he asked Brantley to file an appeal on his behalf. Rather, he asserts in a cursory fashion that Brantley did not consult with him regarding an appeal. Doc. No. 2 at 5. For his part, Brantley states that he discussed the waiver provision

9

in the plea agreement at length with Patrick prior to entry of his guilty plea and explained to him that he was relinquishing his right to appeal except on grounds of ineffective assistance of counsel. Doc. No. 7 at 3. According to Brantley, Patrick did not have any comments or questions about this provision of the plea agreement. *Id*. Brantley further states that Patrick never indicated to him, expressly or otherwise, that he desired to appeal. *Id*.

It is unnecessary in this case to decide the question of whether Brantley fulfilled his duty to consult with Patrick about an appeal. The court's records reflect that Patrick himself filed a timely *pro se* notice of appeal alleging ineffective assistance of counsel against Brantley (*see* Case No. 3:09cr121-WHA, Doc. No. 91) and that his appeal was docketed by the Eleventh Circuit Court of Appeals (Ex. 11). The district court then appointed new counsel to represent Patrick on appeal. *See* Case No. 3:09cr121-WHA, Doc. No. 94. Later, however, after consulting with his appellate counsel, Patrick moved to dismiss his appeal voluntarily. *See* Doc. No. 2-2 & Ex. 12. The Eleventh Circuit granted Patrick's motion to dismiss his appeal on October 14, 2010. *See* Case No. 3:09cr121-WHA, Doc. No. 110.

Under the circumstances, Patrick is unable to demonstrate that he was denied his right to appeal even if Brantley did not consult with him about an appeal. The record is clear that Patrick timely filed a notice of appeal, that his appeal was docketed, and that he was appointed counsel to represent him in his appeal. Had Patrick wished, his appellate counsel could have asserted any and all claims Patrick wished to pursue on appeal. Patrick, however, chose to move for voluntary dismissal of his appeal. Consequently, Patrick cannot show that

he was in any way prejudiced by Brantley's alleged failure to consult with him about an appeal, since a direct appeal was filed and he was duly represented by counsel on appeal. Patrick's failure to demonstrate prejudice forecloses collateral relief based on this claim of ineffective assistance of counsel. *Strickland*, 668 U.S. at 687-88.

### 3. Counsel's Failure to Object to PSI's Application of Relevant Conduct

Patrick contends that Brantley rendered ineffective assistance of counsel by failing to object to the PSI's application of additional relevant conduct based on drug purchases that a confidential informant, Jerome Brundage, reported making from Patrick. Doc. No. 1 at 7; Doc. No. 2 at 6-9. According to Patrick, he told Brantley that Brundage's allegations were untrue and asked Brantley to contact Brundage's girlfriend, Chanika Williams, "to present reliable truthful testimony regarding Mr. Brundage's untruthful allegations."[5] Doc. No. 2 at 9. However, Brantley did not attempt to contact Williams. *Id*. Patrick maintains that he should have been held accountable only for the drug amounts actually seized by authorities and not for any of the (unseized) amounts he allegedly sold to Brundage.[6] *Id*.

Brantley addresses Patrick's allegations as follows:

---

[5] Brundage was killed as a result of a homicide several months before Patrick's guilty plea proceedings.

[6] The PSI indicated that the drugs seized by authorities and included in laboratory reports produced a weight of 99.39 grams of cocaine base. PSI at 8, ¶ 33. The PSI further indicated that Brundage reported purchasing 33.75 ounces – i.e., 99.39 grams – of cocaine base from Patrick between 2007 and 2008. *Id*. The PSI thus found that Patrick was responsible for a total of approximately 1.056 kilograms of cocaine base. *Id*.

>After going over the Pre-sentence Report with Mr. Patrick including the "Offense Conduct" section (paragraphs 16 through 28) Mr. Patrick never denied the accuracy of the weight of the drugs; nor of the frequency of distribution of the drugs; nor of the persons (when identified) to have been the recipients of the drugs. Mr. Patrick never made an issue to me of paragraphs 16 through 28. Mr. Patrick never told me that any of the allegations made by Confidential Sources (including Mr. Jerome Brundage) were untrue statements and/or were merely conclusory or any other words to that effect. Mr. Patrick never informed me that he wanted me to contact Chanika Williams to testify that Mr. Brundage's allegations were untruthful. In fact the first time I have ever known about Chanika Williams was when reading Mr. Patrick's "Memorandum of Law With Citation[s] of Authorities In Support of 28 U.S.C. § 2255 Motion...."

Doc. No. 7 at 4.

Patrick fails to show that an objection to the PSI would have been successful or that he could indeed have presented evidence that would have undermined Brundage's allegations concerning his drug buys from Patrick. In support of his claim, Patrick has filed an affidavit signed by Chanika Williams, dated May 10, 2011, in which Williams states as follows:

>I Chanika Williams under penalty of [perjury] state that the following is true and correct to my knowledge.
>
>I have been knowing Jerome Brudage [sic] for or around eight years. He has been on drugs since I have known him and [I have] never seen him use any large amount of money.
>
>I Chanika Williams agree to testify to the above facts in any court of law.

Doc. No. 2-3.

The representations by Williams in her affidavit are insufficient to tip the scales of the evidence in Patrick's favor and fall far short of casting serious doubt on the truthfulness of

12

Brundage's allegations that he made purchases of drugs from Patrick between 2007 and 2008. Patrick has not shown a reasonable probability that Williams's testimony would have made a difference in the amount of drugs attributed to him at sentencing. Moreover, Williams's affidavit does not establish that she would have been willing to testify on Patrick's behalf *at the time of his sentencing* and indicates only that she agrees to testify to the facts therein in future proceedings. Under the circumstances, the court concludes that Patrick fails to demonstrate deficient performance by Brantley or resulting prejudice. *Strickland*, 668 U.S. at 687-88. Therefore, Patrick is not entitled to any relief based on this claim of ineffective assistance of counsel.

## C. Breach of Plea Agreement

Patrick contends that the Government breached the plea agreement by failing to recommend that he receive drug rehabilitation. Doc. No. 1 at 8; Doc. No. 2 at 10-11.

The plea agreement contained a provision in which the Government agreed that if the PSI indicated Patrick would benefit from drug rehabilitation, any sentence imposed should include a recommendation that he receive drug treatment during his incarceration. Ex. 7 at 4-5. This provision did not require that any such recommendation be made only by the Government.

At sentencing, the district court stated, in relevant part, as follows:

> I am willing to do the part that asks the Court to provide you with drug treatment. I'm going to recommend that you be – that you be given residential drug treatment while you're in prison.

13

Ex. 9 at at 18-19.

Patrick received the drug-treatment recommendation provided for in the plea agreement, and the Government did not breach the plea agreement. Therefore, he is not entitled to relief based on this claim.

### III.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the 28 U.S.C. § 2255 motion filed by Patrick be denied with prejudice, as the claims therein entitle him to no relief.

It is further

ORDERED that the parties shall file any objections to this Recommendation **[on or before June 4, 2013**. A party must specifically identify the findings in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered. Failure to file written objections to the Magistrate Judge's proposed findings and recommendations shall bar a party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

DONE, this 21st day of May, 2013.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE